**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

DON L. JEFFERSON,                                     No. CIV S-08-1367-JAM-CMK-P

        Petitioner,

    vs.                                                      FINDINGS AND RECOMMENDATIONS

M. KRAMER,

        Respondent.

_____/

        Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's amended petition for a writ of habeas corpus (Doc. 11), respondent's answer (Doc. 15), and petitioner's reply (Doc. 25).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

# I. BACKGROUND

A.    **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear

and convincing evidence to rebut the presumption that these facts are correct:

> On August 17, 2005, at around 1:30 p.m., 82-year-old Warren
> Nielsen was inside the U.S. Bank at 9th and J Streets in Sacramento.  He
> had just left the teller and was heading outside.  He was checking the $150
> he had withdrawn from his bank account, getting ready to put it inside his
> wallet, when a man suddenly appeared alongside him.  The man took
> control of Nielsen's hand with one of his hands and grabbed Nielsen's
> money with the other hand.  Nielsen testified that in the time he and the
> man "were fighting over the money," they went from inside the bank to
> outside the bank on J Street.  Nielsen admitted "it wasn't much of a fight"
> because the man just grabbed the money, pushed Nielsen away, and ran.
> Nielsen said he tried to hang onto his money, but could not do so.  Nielsen
> said the man hurt him "a little bit" because he was grabbing for the money,
> but he did not think the man was trying to hurt him.  (footnote omitted).
> The man just wanted the money.  Nielsen raised his hand with the money
> up near his face and as the man grabbed the money, the man exerted some
> pressure on the left side of Nielsen's jaw.  Nielsen said it was "just a
> normal part of getting the money."  When asked if the man had used any
> more force than necessary to get the money out of Nielsen's hand, Nielsen
> non-responsively answered that the man was not trying to hurt him; he just
> wanted the money.  Nielsen believed the man used two hands; one to push
> his head away and the other to grab the money.  Nielsen did not recall
> anything the man did or said before he took the money to make Nielsen
> afraid.
>      Nielsen testified he tried to run after the man, but the man
> disappeared into a park.  Security officers from the bank started chasing
> the man.  Nielsen went back inside the bank and the bank replaced his
> money.
>      At the time of the incident, Steve Benstead was on his motorbike,
> riding on J Street, when a rapid movement to his left caught his attention.
> He turned and saw an encounter between a Caucasian man in his mid-70's
> or older and a young African-American man.  One man ran into the other,
> causing a "deflection" of his body.  He saw the two people rotate slightly.
> There were rapid hand movements consistent with something being taken.
> The older man used one hand, while the African-American man used both
> hands.  The young African-American man took off running east on J
> Street.  A large African-American man came out of a store and gave chase.

---

[1]    Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made
by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this
presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from
the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as
"defendant."

1    Benstead watched as the young man made a left onto 9th Street off
of J Street and headed toward a park, where Benstead lost sight of him.
2    Benstead turned left off of J street onto 10th Street.  When he saw a CHP
bicycle officer, Benstead stopped and gave the officer a description of the
3    incident he had witnessed and what the person involved looked like.
Benstead then continued on 10th Street.  After a couple of blocks,
4    Benstead saw the large African-American man, who had been chasing the
young man, running on a cross-street.  Benstead turned right and when he
5    caught up to the man, Benstead spotted the young man ahead of them.
Benstead followed the young man into another park.  When Benstead got
6    close, the young man turned to face him and pulled out a knife.  Benstead
backed off, but continued to follow the young man at a distance.  Then the
7    CHP officer that Benstead had spoken to arrived.  The officer drew his
gun, ordered the young man (identified in court as defendant) to the
8    ground, and handcuffed him.  Defendant had a wad of cash and a bank
receipt in his left hand.  The account number on the receipt belonged to
9    Nielsen.  A knife was found a short distance away from defendant.
     Terence Litton, the manager of Mango's Grill on J Street, also
10   witnessed the incident between Nielsen and defendant.  He was speaking
to his employees when they brought to his attention something going on
11   out on the sidewalk outside the restaurant; someone was being robbed.
Litton turned and observed through the restaurant's window a slender
12   Black man grabbing a bag from an elderly White man.  The Black man
was jerking the bag away while trying to push the elderly man off or away.
13   Litton believed the man actually pushed the elderly man and he saw the
elderly man start to go down.  Litton did not know if he hit the ground
14   because Litton instinctively ran after the black man.  Another man joined
the chase.  Finally, the man they were chasing was stopped by the police.
15   Both Litton and Benstead positively identified defendant to the
police as the man they saw commit the crime.  Litton told the police he
16   witnesses a struggle and saw defendant take cash from the victim's hand.

17   **B.**    **Procedural History**

18        Petitioner was convicted following a jury trial of robbery and misdemeanor

19   brandishing a knife.  The jury found true the special allegation that the victim was an elderly

20   adult over the age of 65.  The trial court found true that petitioner had a prior conviction in

21   Illinois for attempted murder, a serious felony under California's three strikes law.  Petitioner

22   was sentenced to the middle term of three years for the robbery conviction, doubled to six years

23   under the three strikes law.  A five-year enhancement was added for the prior serious felony

24   conviction, for a total sentence of 11 years in prison.  The trial court stayed an enhancement for

25   having robbed an elderly adult and sentenced petitioner to time served for the misdemeanor knife

26   brandishing conviction.

1    Petitioner's conviction and sentence were affirmed on direct appeal by the

2  California Court of Appeal in a partially published opinion.  See People v. Jefferson, 154

3  Cal.App.4th 1381 (2007).  The California Supreme Court denied direct review without comment

4  or citation, and petitioner did not file any state court post-conviction actions.  Respondent

5  concedes petitioner's federal claims are exhausted.

6

7                              **II.  STANDARDS OF REVIEW**

8    Because this action was filed after April 26, 1996, the provisions of the

9  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively

10  applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.

11  (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA

12  does not, however, apply in all circumstances.  When it is clear that a state court has not reached

13  the merits of a petitioner's claim, because it was not raised in state court or because the court

14  denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

15  habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.

16  2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach

17  petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208

18  (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on

19  perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the

20  evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

21  petition de novo where state court had issued a ruling on the merits of a related claim, but not the

22  claim alleged by petitioner).  When the state court does not reach the merits of a claim,

23  "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

24  / / /

25  / / /

26  / / /

1    Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

2 not available for any claim decided on the merits in state court proceedings unless the state

3 court's adjudication of the claim:

4    (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as determined

5    by the Supreme Court of the United States; or

6    (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the State

7    court proceeding.

8 28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

9 Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).  Thus,

10 under § 2254(d), federal habeas relief is available only where the state court's decision is

11 "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

12 standards, "clearly established law" means those holdings of the United States Supreme Court as

13 of the time of the relevant state court decision.  See Carey v. Musladin, 127 S.Ct. 649, 653-54

14 (2006).  "What matters are the holdings of the Supreme Court, not the holdings of lower federal

15 courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc).  Supreme Court

16 precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless

17 it "squarely addresses" an issue.  See Moses v. Payne, ___ F.3d ___ (9th Cir. Sept. 15, 2008)

18 (citing Wright v. Van Patten, 128 S.Ct. 743, 746 (2008)).  For federal law to be clearly

19 established, the Supreme Court must provide a "categorical answer" to the question before the

20 state court.  See id.; see also Carey, 127 S.Ct at 654 (holding that a state court's decision that a

21 defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an

22 unreasonable application of, the Supreme Court's test for determining prejudice created by state

23 conduct at trial because the Court had never applied the test to spectators' conduct).  Circuit

24 court precedent may not be used to fill open questions in the Supreme Court's holdings.  See

25 Carey, 127 S.Ct. at 653.

26 / / /

1    In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

2    majority of the Court), the United States Supreme Court explained these different standards.  A

3    state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

4    the Supreme Court on the same question of law, or if the state court decides the case differently

5    than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

6    court decision is also "contrary to" established law if it applies a rule which contradicts the

7    governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

8    that Supreme Court precedent requires a contrary outcome because the state court applied the

9    wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

10   Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

11   id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

12   determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040,

13   1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

14   case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

15   is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

16   State court decisions are reviewed under the far more deferential "unreasonable

17   application of" standard where it identifies the correct legal rule from Supreme Court cases, but

18   unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,

19   123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,

20   suggested that federal habeas relief may be available under this standard where the state court

21   either unreasonably extends a legal principle to a new context where it should not apply, or

22   unreasonably refuses to extend that principle to a new context where it should apply.  See

23   Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

24   decision is not an "unreasonable application of" controlling law simply because it is an erroneous

25   or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 123 S.Ct.

26   1166, 1175 (2003).  An "unreasonable application of" controlling law cannot necessarily be

1   found even where the federal habeas court concludes that the state court decision is clearly

2   erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to

3   give proper deference to state courts by conflating error (even clear error) with

4   unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal

5   law, where a state court decision is an "unreasonable application of" controlling law, federal

6   habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn,

7   283 F.3d at 1052 n.6.

8           The "unreasonable application of" standard also applies where the state court

9   denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

10  848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions

11  are considered adjudications on the merits and are, therefore, entitled to deference under the

12  AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

13  The federal habeas court assumes that state court applied the correct law and analyzes whether

14  the state court's summary denial was based on an objectively unreasonable application of that

15  law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

16

17                              **III.  DISCUSSION**

18          Petitioner raises two claims:  (1) the trial court erred in finding that the prior

19  Illinois conviction for attempted murder qualified as a serious felony conviction for purposes of

20  enhancing his sentence because the evidence failed to establish all of the elements of attempted

21  murder under California law; and (2) the prior conviction should be stricken because he was

22  denied the right to have a jury determine whether it qualified as a "strike."

23          Addressing petitioner's second claim first, the state court correctly concluded that,

24  while petitioner had a right to a jury trial as to any fact that increases the penalty for a crime

25  beyond the statutory maximum, no such right exists with respect to a prior conviction.  See

26  Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (citing Almendarez-Torres v. United States,

1  523 U.S. 224 (1998), and holding that "[o]ther than the fact of a prior conviction, any fact that

2  increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

3  a jury, and proved beyond a reasonable doubt").  This exception for prior convictions was not

4  abrogated by Cunningham v. California, 127 S.Ct. 856 (2007), which applied Apprendi to

5  California's former determinate sentencing law.  Because petitioner had no right to a jury trial to

6  determine the fact of the prior conviction, the state court's determination of petitioner's second

7  claim was not an unreasonable application of clearly established law.

8          Turning to petitioner's first claim, the Court of Appeal stated:

9          The trial court granted defendant's pretrial motion to bifurcate trial
of his prior convictions and later granted the prosecution's motion to
10  amend the information to allege only a single prior conviction for
attempted murder.  To expedite matters in the event of a conviction, the
11  court took up the legal issue of whether defendant's 1984 Illinois prior
conviction for attempted murder qualified as a serious felony under
12  California law while the jury was deliberating on the robbery and
brandishing of a weapon charges.  The prosecution contended the prior
13  conviction qualified as a serious felony under [California Penal Code]
section 1192.7, subdivisions (c)(8) and (c)(9). . . .

14

15  In footnotes, the court noted that, under § 1192.7(c)(8) a serious felony is "any felony in which

16  the defendant personally inflicts great bodily injury on any person, other than an accomplice, or

17  any felony in which the defendant personally uses a firearm," and that, under § 1192.7(c)(9), a

18  serious felony includes attempted murder.  The Court of Appeal continued its discussion as

19  follows:

20          . . . In support of its position, the prosecution introduced into evidence a
certified copy of the 1984 Illinois information charging defendant with
21  attempted murder and copies of defendant's file from the Robinson
Correctional Center in Illinois, which included, among other things, a copy
22  of defendant's order of sentence and commitment based on defendant's
"plea of guilty to charge of attempt murder" and a copy of a document
23  entitled "OFFICIAL STATEMENT OF FACTS."  After receiving these
records, the trial court found defendant had "pled to an offense in which he
24  inflicted great bodily injury and it was a felony in which he personally
used a firearm[,]" making his prior conviction a serious felony under
25  section 1192.7, subdivision (c)(8).

26  / / /

1

2

3

4

5

6

7

8

9

10

11

12

        Defendant contends the evidence is insufficient to establish his 1984 Illinois conviction for attempted murder included all the elements required for a serious felony under section 1192.7 . . . .  Noting that neither the parties nor the trial court could find a copy of the Illinois statute defining attempted murder applicable in 1984, defendant claims the prosecutor failed to offer substantial evidence of all the elements of a 1984 Illinois attempted murder.   Defendant claims the Illinois statutes that were introduced . . . show Illinois permits a conviction of attempted murder based on a different mental state from that required in California.  Defendant contends the prosecutor failed to prove the prior conviction qualified as a serious felony under subdivision (c)(8) . . . because the information did not establish defendant "personally inflict[ed]" great bodily injury on a person "other than an accomplice" or "personally used a firearm[.]" (citation omitted).  He claims the Official Statement of Facts is not part of the record of conviction and is inadmissible hearsay.

        We conclude substantial evidence supports the trial court's finding that defendant's 1984 attempted murder conviction qualified as a serious felony under subdivision (c)(8) . . . because, even without the Official Statement of Facts the documents introduced established defendant personally used a firearm in committing the prior offense.  In light of this conclusion, we need not reach the issues relating to defendant's personal infliction of great bodily injury on a person other than an accomplice or the elements of attempted murder under 1984 Illinois law.

13    The state court observed that, under California's three strikes law, a conviction

14  from another jurisdiction can qualify as a serious felony if it involves conduct that would qualify

15  as a serious felony in California.  See People v. Avery, 27 Cal.4th 49, 53 (2002).  The court also

16  noted that, in making this determination, the trier of fact may look beyond the judgment to the

17  entire record of the prior conviction.  See People v. Trujillo, 40 Cal.4th 165, 177 (2006).  In

18  concluding that the trial court did not err regarding the Illinois conviction, the Court of Appeal

19  observed that petitioner had pleaded guilty to "intentionally and knowingly attempting to kill the

20  victim by shooting him with a gun. . . ."  The court agrees with the Court of Appeal that, from

21  this, it is clear that the Illinois conviction involved the personal use of a firearm and, for this

22  reason alone, qualified as a strike under § 1192.7(c)(8).  Because there was substantial evidence

23  to support the enhancement, the state court's determination of this claim was neither contrary to

24  nor an unreasonable application of the law.

25  / / /

26  / / /

1

## IV.  CONCLUSION

2          Based on the foregoing, the undersigned recommends that petitioner's amended

3   petition for a writ of habeas corpus (Doc. 11) be denied.

4          These findings and recommendations are submitted to the United States District

5   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

6   after being served with these findings and recommendations, any party may file written

7   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

8   Findings and Recommendations."  Failure to file objections within the specified time may waive

9   the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11    DATED: January 2, 2009

12

13                                          _____
                                           **CRAIG M. KELLISON**
                                           UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26